IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRED LEON JACKSON,

        Plaintiff,                     No. CIV S-05-2498 MCE GGH P

    vs.

R. ROWLETT, et al.,

        Defendants.            FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the original complaint filed December 9, 2005. Plaintiff alleges that defendants Moreno, Carroll and Elias retaliated against him for filing a grievance against former defendant Rowlett by wrongfully finding him guilty of violating the grooming regulations.[1]

        Pending before the court is defendants' motion for summary judgment filed May 31, 2007. On September 7, 2007, plaintiff filed an opposition. On October 3, 2007, defendants filed a reply. After carefully considering the record, the court recommends that defendants' motion be granted.

---

[1] On August 8, 2007, defendant Rowlett was dismissed.

1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On March 30, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

UNDISPUTED FACTS

On July 22, 2002, Dr. Streeter examined plaintiff. An entry in plaintiff's medical records for that date by Dr. Streeter states, "no shaving chrono."

In January 2003 prisoners at the California Medical Facility, where plaintiff was incarcerated, were prohibited from wearing a beard unless they had authorization signed by the Health Care Manager or the Chief Medical Officer exempting them for medical necessity.

On January 21, 2003, plaintiff wore a goatee. On January 21, 2003, Sergeant Rowlett informed plaintiff that his facial hair was in violation of the grooming regulations.[2] On January 22, 2003, plaintiff filed a staff complaint alleging that Sergeant Rowlett had assaulted him on January 21, 2003.

On January 23, 2003, a chrono was issued authorizing plaintiff to be exempt from the shaving regulations from January 23, 2003, through January 22, 2004. This chrono was signed by Dr. Streeter as well as Chief Medical Officer Bick and Health Care Manager Khoury.

An entry in plaintiff's medical records by Dr. Streeter from January 23, 2003, states "renewal of chrono."

On January 23, 2003, Sergeant Rowlett filed a rules violation report charging plaintiff with not complying with the grooming regulations. The report states that on January 21, 2003, he observed plaintiff wearing a goatee that exceeded the 1/4 inch maximum length allowed

---

[2] In his complaint and declaration filed in support of his opposition to defendants' summary judgment motion, plaintiff alleges that this incident occurred on January 21, 2003. At his deposition, plaintiff expressed confusion regarding whether the incident occurred on January 21, 2003, or January 22, 2003. Because the complaint and recently prepared declaration contain the January 21, 2003, date, the court finds this to be the date on which the incident occurred.

by the regulations.

A mental health assessment of plaintiff prepared prior to the disciplinary hearing states, "Pt. Show doc order for a shaving chrono dated 7-22-02 by Dr. Steever in B-1 Clinic."

On January 30, 2003, defendant Elias found plaintiff guilty of the rules violation report. The rules violation report states that defendant Elias found plaintiff guilty based on "[t]he contents of the written report which stated in part, 'Inmate has not [sic] current chrono stating he can have a goatee.'" Defendants Moreno and Carroll reviewed the guilty finding and determined that it was appropriate.

On May 5, 2003, plaintiff's allegations of staff misconduct against Sergeant Rowland were partially sustained by prison officials who found that he rubbed his hand in plaintiff's face.

DISCUSSION

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmates's exercise of his First Amendment rights, [footnote 5], and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir. 2005).

In Rhodes v. Robinson, the Ninth Circuit also indicated that an allegation of harm could be sufficient if the inmate could not allege a chilling effect:

> If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect. Alleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety. See e.g., Pratt, 65 F.3d at 807 (deciding that alleged harm was enough to ground a First Amendment retaliation claim without independently discussing whether the harm had a chilling effect); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989)(same).

408 F.3d at 568 n. 11.

/////

Plaintiff argues that defendants wrongfully found him guilty of the rules violation report in retaliation for his filing of the grievance against Sergeant Rowlettt. Plaintiff argues that he was not guilty of the rules violation because he had a chrono exempting him from the grooming regulations for medical reasons.

Defendants first argue that because plaintiff did not have a valid chrono on January 21, 2003, exempting him from the grooming regulations, they had a legitimate reason for finding him guilty of the rules violation. For the following reasons, the court agrees.

In his declaration submitted in support of his opposition, plaintiff claims that on January 21, 2003, he had a "temporary" chrono exempting him from the grooming regulations for medical reasons. Plaintiff's declaration, ¶ 11. Plaintiff states that this temporary chrono was Dr. Streeter's July 2002 handwritten entry in his medical records stating "no shaving chrono." Id., ¶ 11-12. This entry in plaintiff's medical records was not a legitimate chrono exempting plaintiff from the grooming regulations. This entry was merely just that – a notation in plaintiff's medical records. It did not indicate that this recommendation was authorized by either the Chief Medical Officer or the Health Care Manager, as required by the regulations.

While plaintiff obtained a chrono exempting him from the regulations from January 23, 2003, through January 22, 2004, he has offered no other evidence demonstrating that he had a chrono on January 21, 2003. Accordingly, because defendants had a legitimate correctional goal for finding plaintiff guilty of the rules violation report, i.e. his failure to comply with the grooming regulations, plaintiff's retaliation claim fails.

The court observes that the rules violation report prepared by defendant Elias states that he found plaintiff guilty based on "[t]he contents of the written report which stated in part, 'Inmate has not [sic] current chrono stating he can have a goatee.'" Neither Sergeant Rowlett's report nor the mental health assessment state that plaintiff did not have a current chrono. In his declaration filed in support of defendants' motion, defendant Elias does not explain what report he relied on to make this finding. However, because the record is clear that

1  on January 21, 2003, plaintiff did not have a chrono exempting him from the grooming
2  regulations, defendants' failure to explain this matter is not material.
3        The court also observes that Sergeant Rowlett's report charged plaintiff with
4  wearing a goatee that was longer than permitted by the regulations. In contrast, defendant Elias
5  found that plaintiff was not authorized to wear a goatee because he did not have a valid chrono.
6  This discrepancy is not material because it is clear that plaintiff did not have a valid chrono.
7  While plaintiff disputes whether his beard exceeded the 1/4 inch limit of the regulations, this
8  dispute is not material for the same reason.
9        A reasonable inference from all the evidence in this case is that in July 2002 Dr.
10 Streeter intended to obtain a chrono for plaintiff exempting him from the grooming regulations
11 but for whatever reason, perhaps he forgot, failed to do so. His declaration attached to
12 defendants' reply brief does not address this issue. In any event, it appears that when it was
13 brought to his attention by plaintiff on January 23, 2003, that the chrono had not been issued, he
14 immediately obtained one. Dr. Streeter's entry in plaintiff's medical records that the chrono was
15 to be renewed is puzzling, because there is no evidence that one had previously been issued. In
16 his declaration he states that although his notes state renewal of chrono, he does not recall seeing
17 plaintiff with a prior chrono signed by the Chief Medical Officer and the Health Care Manager.
18       While plaintiff did not have a chrono authorizing his exemption from the
19 grooming regulations on January 21, 2003, the record suggests that he should have. Under these
20 circumstances, defendants' determination that plaintiff violated the grooming regulations on that
21 date was highly technical and somewhat unfair. The disciplinary violation here might even be
22 characterized as retaliatory in the sense that defendants were "looking out" for plaintiff to "trip
23 up," and when he did – the violation notice was swiftly produced. However, this is no different
24 from the police targeting an individual who has "gotten away" with perceived crimes, and then
25 charging the "teflon defendant" with an actual, but perhaps technical, criminal offense. Al
26 Capone comes to mind, but his tax evasion charge was not retaliation because it was in fact

committed. The point here is that plaintiff cannot be retaliated against if the charge is based in fact whatever the motivation for bringing it.

Defendants also argue that they are entitled to summary judgment because they were not aware that plaintiff had filed a grievance against Sergeant Rowlett. Plaintiff, albeit in a somewhat conclusory fashion, disputes this claim. Because it is clear that plaintiff did not have a valid chrono exempting him from the grooming regulations on January 21, 2003, the court will not reach this issue.

Defendants also argue that they are entitled to qualified immunity. Because defendants are entitled to summary judgment on the merits of plaintiff's claim, the court need not reach this issue.

Finally, in his opposition plaintiff requests that the court take judicial notice of the fact that the grooming regulations were later amended and repealed. Plaintiff also requests that the court take judicial notice of Mayweathers v. Terhune, 328 F. Supp. 2d 1086 (E.D. Cal. 2004) which addressed the grooming regulations as applied to Muslim inmates. Because plaintiff does not challenge the constitutionality of the grooming regulations, and because there is no claim in his complaint that the regulations violated his religious faith, the court will not take judicial notice of the changed regulations nor Mayweathers as they are not relevant.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' May 31, 2007, summary judgment motion be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District

Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 12/17/07

/s/ Gregory G. Hollows

_____
UNITED STATES MAGISTRATE JUDGE

jack2498.sj